TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00790-CR






Samuel Shaw, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT

NO. D-1-DC-09-302334, THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted appellant Samuel Shaw of the offense of indecency with a child by
contact and assessed his punishment, enhanced by a prior felony conviction, at confinement for
45 years in the Institutional Division of the Texas Department of Criminal Justice. See Tex. Penal
Code Ann. §§ 12.42(b); 21.11(a)(1) (West 2011). On appeal, appellant challenges the sufficiency
of the evidence and complains about error in the jury charge. We affirm the judgment of conviction.


BACKGROUND

 The jury heard evidence that K.E., the victim in this case, lived with her grandmother,
Theodora Dean, whom she called "Baybay," and appellant when she was eight years old. They lived
in a two-room house, and K.E. slept with her grandmother and appellant. At trial, K.E. testified
about three occasions when, while she was sleeping in her grandmother's bed, appellant put his hand
inside her underwear, moved his hand around, and touched her "privacy parts." (1) She testified that
during these incidents appellant touched her on the inside of her privacy with his whole hand,
moving it up and down, and it hurt. (2) On the first occasion, K.E. was in bed between appellant and
her grandmother. She made appellant stop touching her by snuggling closer to her grandmother. 
The second time, K.E.'s grandmother was not in bed with them but was in the kitchen cleaning up. 
K.E. made appellant stop touching her by getting up to use the restroom and moving to another
room. On the third occasion, K.E. was sleeping in the bed with appellant while her grandmother
slept on the couch. This time, appellant stopped when K.E. went to lie down with her grandmother.

 K.E. told her 11-year-old cousin Arianna what appellant had done to her. The girls
were playing school when Arianna, playing the teacher, asked, "What would you do if someone was
trying to hurt you?" K.E. testified that she told Arianna "something that really happened to
[her]"--that appellant had put his hand in her underwear. Arianna took K.E. to tell Arianna's aunt
what happened. Andrea Tasby Norwood, known as "Aunt Sue" to K.E., testified at trial as the
outcry witness. She stated that K.E. told her that "Baybay['s] boyfriend touched me" when she was
asleep in bed. When Norwood asked K.E. where appellant had touched her, K.E. pointed to her
genital area.

 Theodora Dean, K.E.'s grandmother, testified that K.E. occasionally lived or stayed
with her and appellant. She stated that K.E. did not have her own room at the house, so she slept
with them in their bed. Dean testified about a change in K.E.'s behavior. She noticed that K.E.
"wasn't all bubbly anymore" when appellant would drive up. Dean recalled a particular incident
when she and appellant went to pick up K.E. from her mother and K.E. was crying and screaming
that she did not want to go, and begged Dean not to make her go with them. (3) Dean also recalled an
incident when she walked into the bedroom and "it just didn't look right to [her]." Dean pulled back
the bed covers and saw K.E.'s heel on appellant's private part. When Dean asked appellant what
he was doing, he "jumped up and started saying, oh, you think I'm messing with your baby." Dean
replied "I never said that." Dean testified, crying, that she did not pursue the issue.

 A forensic interviewer from the local child advocacy center testified about her
interview of K.E. (4) The interviewer testified that when she asked K.E. why she was at the center,
K.E. was hesitant, looked down, covered her face with her hands and cried. Eventually K.E. told her
that she was there because of her grandmother's boyfriend. She told the interviewer that appellant
put his hand in her "privacy." Using an anatomically correct female doll, K.E. indicated that her
"privacy" was between her legs. (5) K.E. stated that appellant opened her underwear and put his hand
in there. She said he moved his hand up and down and it hurt. K.E. told the interviewer that
appellant had touched her privacy more than once and that the touching began when she was
seven years old.

 Dr. Beth Nauert, a pediatrician and the medical director for the child assessment
program at the advocacy center, examined K.E. approximately one year after the abuse occurred. 
K.E. told Dr. Nauert that she was touched on her private part inside her clothes by her grandmother's
boyfriend. She put her hands between her legs over her female sexual organ to show the doctor
where she was touched. K.E.'s physical exam was normal, which was consistent with the history
she presented to Dr. Nauert of being touched on her private part. Dr. Nauert testified that most of
the time that type of examination will be normal, especially where it had been a year since the sexual
abuse occurred, and it did not establish whether or not the abuse occurred. Dr. Nauert indicated that
many children do not know the female anatomy and do not know that there are several layers of the
female sexual organ. She explained to the jury the layers of the female sexual organ and how a
person could rub inside a child's private part but not actually go into her vagina. The State's other
witnesses included the Austin Police Department detective who investigated the case and Dr.
William Carter, a psychologist, who testified regarding the dynamics of child abuse.

 The jury found appellant guilty of indecency with a child by contact as alleged in the
indictment. (6) This appeal followed.



DISCUSSION

 Appellant raises three points of error on appeal. The first two points assert that the
evidence was insufficient to support his conviction. In his third point, appellant argues that he
suffered egregious harm due to error in the jury charge. For the reasons that follow, we reject
appellant's arguments.


Sufficiency of the Evidence

 In his first two points of error, appellant challenges the legal and factual sufficiency
of the evidence to support his conviction for indecency with a child by contact. We no longer
employ distinct legal and factual sufficiency standards when reviewing the sufficiency of the
evidence to sustain a criminal conviction. See Merritt v. State, 368 S.W.3d 516, 525 n.8 (Tex. Crim.
App. 2012); Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Instead, the only
standard for determining whether the evidence proves the defendant's guilt beyond a reasonable
doubt is the Jackson due-process standard. Brooks, 323 S.W.3d at 912; see Merritt, 368 S.W.3d at
525 n.8; Griego v. State, 337 S.W.3d 902 (Tex. Crim. App. 2011).

 Due process requires that the State prove, beyond a reasonable doubt, every element
of the crime charged. Jackson v. Virginia, 443 U.S. 307, 313 (1979); Byrd v. State, 336 S.W.3d 242,
246 (Tex. Crim. App. 2011). When reviewing the sufficiency of the evidence to support a
conviction, we consider all of the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson, 443 U.S. at 319; Brooks, 323 S.W.3d at 899. The sufficiency of the
evidence is measured by reference to the elements of the offense as defined by a hypothetically
correct jury charge for the case. Villarreal v. State, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

 In determining the legal sufficiency of the evidence, we must consider all the evidence
in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the
prosecution or the defense. See Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); Moff
v. State, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004); Allen v. State, 249 S.W.3d 680, 688-89
(Tex. App.--Austin 2008, no pet.). We review all the evidence in the light most favorable to the
verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence,
and drew reasonable inferences in a manner that supports the verdict. Jackson, 443 U.S. at 318; see
Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). A legal-sufficiency review requires
us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their
testimony. Brooks, 323 S.W.3d at 899. The jury, as exclusive judge of the facts, is entitled to weigh
and resolve conflicts in the evidence and draw reasonable inferences therefrom. Clayton,
235 S.W.3d at 778; see Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). Thus, when faced with
a record of historical facts that supports conflicting inferences, we must presume that the trier of fact
resolved any such conflicts in favor of the verdict and defer to that resolution. Jackson, 443 U.S.
at 326; Padilla v. State, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). We consider only whether
the jury reached a rational decision. See Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

 The standard of review on appeal is the same for both direct and circumstantial
evidence cases. Kuciemba v. State, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Circumstantial
evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to
establish guilt. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Every fact does not need
to point directly and independently to the guilt of the appellant, as long as the cumulative force of
all the incriminating circumstances is sufficient to support the conviction. Id. So long as "the
verdict is supported by a reasonable inference, it is within the province of the factfinder to choose
which inference is most reasonable." Laster, 275 S.W.3d at 523. As with any question of
circumstantial evidence and inference, "the jurors are free to use their common sense and apply
common knowledge, observation, and experience gained in the ordinary affairs of life when giving
effect to the inferences that may reasonably be drawn from the evidence." Boston v. State,
No. 03-10-00399-CR, 2012 WL 2509798, at *3 (Tex. App.--Austin June 27, 2012, pet. filed)
(quoting Obigbo v. State, 6 S.W.3d 299, 306 (Tex. App.--Dallas 1999, no pet.)).

 The elements of indecency with a child by contact are that the defendant (1) engaged
in "sexual contact," (2) with a child younger than 17 years of age, (3) whether the child is of the
same or opposite sex. See Tex. Penal Code Ann. § 21.11(a)(1). "Sexual contact" means the
following acts, if committed with the intent to arouse or gratify the sexual desire of any person: 
(1) any touching by a person, including touching through clothing, of the anus, breast, or any part
of the genitals of a child; or (2) any touching of any part of the body of a child, including touching
through clothing, with the anus, breast, or any part of the genitals of a person. Id. § 21.11(c).

 Appellant first argues that the evidence is insufficient because the physical evidence
presented at trial contradicts the sexual contact described by K.E. Appellant asserts that "the
complainant's allegation[ ] . . . was three separate acts of penetration into the genitals with a moving
adult hand," yet the normal exam results, with a showing that K.E.'s hymen remained intact,
combined with Dr. Nauert's testimony, demonstrate that these alleged acts of penetration could not
have occurred. At best, appellant's interpretation of the exam results and the doctor's testimony
creates a conflict in the evidence, and we find no flaw in the jury's resolution of this conflict against
appellant. See Jackson, 443 U.S. at 326. The jury, as exclusive judge of the facts, is entitled to
weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. Clayton,
235 S.W.3d at 778. More importantly, however, sufficient evidence to support appellant's
conviction for indecency with a child by contact requires only that the evidence demonstrate that
appellant touched K.E.'s genitals with the requisite intent. There is no requirement that the evidence
demonstrate penetration. As factfinder, the jury may choose to believe all, some, or none of the
testimony presented. Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); Bargas
v. State, 252 S.W.3d 876, 888 (Tex. App.--Houston [14th Dist.] 2008, no pet.). The jury could have
chosen to believe K.E.'s testimony about appellant touching her "privacy" and concluded that
appellant touched her genitals even if they did not believe that he penetrated her sexual organ by
touching inside her vagina.

 Furthermore, while Dr. Nauert expressed doubts about an eight-year-old child's
hymen remaining intact if a grown man placed his whole hand, moving it up and down, inside her
female sexual organ, she clearly indicated in her testimony that rubbing a child "inside" her private
parts does not necessarily mean touching inside her vagina. (7)


 Courts recognize that a child victim is often unable to explain the intricacies of sexual
abuse in explicit terms. See Villalon v. State, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). As a
matter of public policy, child victims of crimes are not expected to testify with the same clarity and
ability as expected of mature and capable adults. Id. "To expect such a technical requirement of
children would be to condone, if not encourage, the searching out of children to be victims of
crimes." Id. "Where the child has sufficiently communicated to the trier of fact that the touching
occurred to a part of the body within the definition of [sexual contact], the evidence will be sufficient
to support a conviction regardless of the unsophisticated language that the child uses." Clark
v. State, 558 S.W.2d 887, 889 (Tex. Crim. App. 1977).

 Here, K.E. described the incidents using terminology consistent with her age. She
knew that appellant put his whole hand inside her underwear, and she felt pain when he touched
"inside" her privacy. A rational jury could infer from her testimony that appellant placed his whole
hand inside her underwear but only partially penetrated her female sexual organ with his fingers. 
Certainly, a rational jury could conclude that, at a minimum, appellant touched her genitals. The
testimony of a child victim alone is sufficient to support a conviction for indecency with a child. See
Tex. Code Crim. Proc. Ann. art. 38.07 (West 2005); Perez v. State, 113 S.W.3d 819, 838 (Tex.
App.--Austin 2003, pet. ref'd). In addition to K.E.'s testimony, however, the jury also heard Dr.
Nauert's testimony explaining that children of K.E.'s age often do not have an anatomically accurate
understanding of the female sexual organ so that K.E.'s perception of "inside" her privacy could be
inside her female sexual organ without penetrating inside the deeper layers to her vagina. Viewing
the evidence in the light most favorable to the verdict, as we must, we conclude that the evidence
was sufficient to allow the jury to reasonably conclude that appellant touched K.E.'s genitals as
alleged in the indictment.

 Appellant next contends that the evidence is insufficient because it fails to
demonstrate that he engaged in the sexual contact with the intent to arouse or gratify his sexual
desire. He argues that the State presented no evidence of intent to arouse or gratify, only speculation,
because there is no evidence of any conduct or remarks on his part that evidenced his intent to arouse
or gratify his sexual desire. We disagree.

 Rarely will there be direct evidence of what an accused intended at the time of the
incident. See Moore v. State, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) ("Mental states are almost
always inferred from acts and words."). Thus, as with the other essential elements of the offense,
circumstantial evidence can be used to establish intent. See Rivera-Reyes v. State, 252 S.W.3d 781,
785 (Tex. App.--Houston [14th Dist.] 2008, no pet.); Scott v. State, 202 S.W.3d 405, 408 (Tex.
App.--Texarkana 2006, pet. ref'd). In the context of indecency with a child, the jury may infer the
specific intent to arouse or gratify the sexual desire of a person from the conduct or remarks of the
accused, or from the surrounding circumstances. McKenzie v. State, 617 S.W.2d 211, 216 (Tex.
Crim. App. 1981). No oral expression of intent or visible evidence of sexual arousal is necessary. 
Connell v. State, 233 S.W.3d 460, 471 (Tex. App.--Fort Worth 2007, no pet.); Scott, 202 S.W.3d
at 408. The intent to arouse or gratify may even be inferred from conduct alone. McKenzie,
617 S.W.2d at 216; Williams v. State, 305 S.W.3d 886, 891 (Tex. App.--Texarkana 2010, no pet.);
see Abbott v. State, 196 S.W.3d 334, 341 (Tex. App.--Waco 2006, pet. ref'd) (jury could infer intent
to arouse or gratify sexual desire from defendant's act of touching child's genitals). Here, a rational
jury could infer appellant's intent to arouse or gratify his sexual desire from his conduct under the
described circumstances--touching K.E.'s genitals, beneath her underwear, moving his hand up and
down, during the night while she was sleeping, on repeated occasions.

 In sum, the evidence is sufficient to demonstrate that appellant touched K.E.'s
genitals with the intent to arouse or gratify his sexual desire. Accordingly, we find that the evidence
is sufficient to support appellant's conviction for indecency with a child by contact. We overrule
his first and second points of error.


Jury-Charge Error

 In his third point of error, appellant argues that the jury charge incorrectly included
the mental states of "intentionally" and "knowingly," allowing the jury to convict him without
finding the specific intent necessary to complete the offense of indecency with a child by
contact--the intent to arouse or gratify his sexual desire. He further contends that this jury-charge
error caused egregious harm.

 As noted in our previous discussion, the elements of indecency with a child are that
the defendant (1) engaged in "sexual contact," (2) with a child younger than 17 years of age,
(3) whether the child is of the same or opposite sex. See Tex. Penal Code Ann. § 21.11(a)(1). 
Again, "sexual contact" means the following acts, if committed with the intent to arouse or gratify
the sexual desire of any person: (1) any touching by a person, including touching through clothing,
of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body
of a child, including touching through clothing, with the anus, breast, or any part of the genitals of
a person. Id. § 21.11(c).

 Count two of the indictment in this case alleged that appellant "did then and there
intentionally and knowingly with intent to arouse or gratify the sexual desire of [appellant], engage
in sexual contact with [K.E.], a child younger than 17 years of age and not the spouse of [appellant],
by touching the genitals of [K.E.]." The jury charge contained the following application paragraph:


 Now, bearing in mind the foregoing instructions, if you believe from the evidence
beyond a reasonable doubt that on or about the 1st day of August 2009 and before the
presentment of this indictment, in the County of Travis, and State of Texas,
[appellant] did then and there, intentionally or knowingly, with the intent to arouse
or gratify the sexual desire of [appellant], engage in sexual contact with [K.E.] by
touching the genitals of [K.E.], a child younger than 17 years of age and not the
spouse of [appellant], you will find the defendant guilty of the offense of Indecency
with a Child by Contact and so say by your verdict, but if you do not so believe, or
if you have a reasonable doubt thereof, you will acquit the defendant of Indecency
with a Child by Contact and say by your verdict not guilty.



The jury charge also provided the statutory definitions of "intentionally" and "knowingly" in the
abstract portion of the charge. See id. § 6.03(a), (b) (West 2011).

 We review alleged jury-charge error in two steps: first, we determine whether error
exists; if error exists, we then review for harm. Ngo v. State, 175 S.W.3d 738, 743 (Tex. Crim. App.
2005); Swearingen v. State, 270 S.W.3d 804, 808 (Tex. App.--Austin 2008, pet. ref'd). Assuming
without deciding that the inclusion of the mental states "intentionally" and "knowingly" in the
application paragraph constituted jury-charge error, (8) we conclude that appellant has not shown that
he suffered "egregious harm" as a result of the instruction.

 The degree of harm required for reversal depends on whether the jury-charge error
was preserved in the trial court. If the appellant objected to the error at trial, reversal is required if
the error "is calculated to injure the rights of the defendant," which has been defined to mean that
there is "some harm." Barrios v. State, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). In contrast, if the
appellant did not object at trial, the error must be "fundamental," and reversal is required only if the
error was so egregious and created such harm that the defendant "has not had a fair and impartial
trial." Id.

 Appellant did not object to the jury charge at trial. Thus, the error does not call for
a reversal of the conviction unless it was so egregiously harmful under the circumstances as to have
denied appellant a fair and impartial trial. Delgado v. State, 235 S.W.3d 244, 249 (Tex. Crim. App.
2007); Almanza, 686 S.W.2d at 171. Any harm that is inflicted by the erroneous charge must be
"assayed in light of the entire jury charge, the state of the evidence, including the contested issues
and weight of the probative evidence, the argument of counsel, and any other relevant information
revealed by the record of the trial as a whole." Id.; see Ngo, 175 S.W.3d at 750 n.48. "Jury-charge
error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a
valuable right, or vitally affects a defensive theory." Stuhler v. State, 218 S.W.3d 706, 719 (Tex.
Crim. App. 2007) (citing Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). We engage
in this assessment to illuminate the actual, not just theoretical, harm to the accused. Almanza,
686 S.W.2d at 174. Egregious harm is a difficult standard to meet and must be determined on a
case-by-case basis. See Ellison v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); Hutch,
922 S.W.2d at 171.

 Looking at the jury charge as a whole, the abstract portion accurately stated the
substantive law on the offense of indecency with a child by contact--including the specific intent
to arouse or gratify the sexual desire of any person--thus informing the jury of what the State did
and did not have to prove. (9)
 Although the charge defined "intentionally" and "knowingly" and
included those terms in the application portion of the charge, it did not include them in the abstract
portion of the charge setting forth the substantive law of indecency with a child. Thus, the
complained-of instruction was "corrected or ameliorated" in another portion of the charge. See Ngo,
175 S.W.3d at 752. Moreover, the charge included the required specific intent to arouse or gratify
appellant's sexual desire in the application paragraph, along with the presumably erroneous
"intentionally or knowingly" language. The charge also correctly addressed the indictment, the
presumption of innocence, the credibility of witnesses and weight to be given their testimony, and
the State's burden of proof. Consequently, within the context of the entire jury charge, the erroneous
application paragraph appears less harmful.

 Regarding the state of the evidence, the primary contested issue at trial was whether
the touching occurred. Appellant did not testify, but his attorney challenged K.E.'s credibility and
the plausibility of her account of the offense. K.E. testified that, on several occasions, while she was
in bed with appellant, appellant put his hand inside her underwear and touched her genitals, moving
his hand up and down, touching her inside her "privacy," which hurt her. Appellant's intent was not
a contested issue at trial. Appellant's theory of the case was that K.E.'s grandmother and mother
manipulated K.E. into saying that appellant had sexually molested her. By finding appellant guilty
of indecency with a child, the jury found that appellant touched K.E.'s genitals beneath her
underwear as alleged. There is no evidence in the record of any circumstances that would have led
the jury to find that appellant engaged in such conduct without the specific intent necessary for
indecency with a child. Nor, under the facts of this case, can we conceive of a scenario in which
appellant could have touched an eight-year old girl's genitals as described, on multiple occasions,
unless he did so with the intent to arouse or gratify his sexual desire.

 We next address the arguments of counsel. During closing argument, neither the
State nor appellant's counsel referred to any requirement that appellant act intentionally and
knowingly. Nor did counsel for either party discuss the requisite specific intent to arouse or gratify
the sexual desire of appellant when discussing the elements of indecency with a child. The primary
focus of the arguments of counsel was whether the touching occurred at all--the contested issue at
trial. Consequently, the jury was not misled by the arguments of counsel.

 In light of our review of the jury charge, the evidence, the arguments of counsel, and
other relevant information, we conclude that the complained-of error in the jury charge did not cause
egregious harm to appellant. Accordingly, we overrule his third point of error.


CONCLUSION

 We hold that the evidence was sufficient to support appellant's conviction for
indecency with a child by contact and that any error in the jury charge did not cause appellant
egregious harm. Accordingly, we affirm the judgment of conviction.



 __________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Rose

Affirmed

Filed: August 29, 2012

Do Not Publish

1. K.E. described her "privacy parts" as the place between her legs where she uses the
bathroom or urinates.
2. The record reflects that K.E. demonstrated how appellant moved his hand for the jury,
making a motion with her hand as if waving goodbye.
3. Katrina Jones, K.E.'s mother, also recalled that K.E.'s attitude and behavior changed
"drastically" in the two to three months before K.E. made her outcry. Jones testified that K.E. had
"crying outbursts" and had lost interest in going to see her grandmother, which was very unusual.
4. A DVD of the forensic interview was admitted into evidence by agreement of the parties
and played for the jury.
5. K.E. pulled up the doll's dress and pulled down the front part of the panties to show the 
"privacy" on the doll. She also told the interviewer that she used her privacy to go to the restroom. 

6. The record reflects that an additional count of aggravated sexual assault of a child was
abandoned by that State at trial due to defects in that count of the indictment.
7. The relevant portions of Dr. Nauert's testimony follows:

 

 Q. Dr. Nauert, is it possible for a man to place his hand, four fingers, inside an
eight-year-old's vagina and move it up and down and the hymen
remain intact?


 A. It would be unlikely if it was actually into the vagina. You need to remember
the female sexual organ consists of a lot more than just a vagina, but I would
say four adult fingers, inside of a vagina, it would be unusual.

 . . . 


 Q. Is it possible that when an eight-year-old describes her private part, she may
not know the difference between entering the vagina itself or just outside the
vagina, but yet -- can you explain to the jury how a child may not understand
his or her body or may not be able to describe his or her body accurately.


 A. Well, I think it's not just a child; I think children and adults. Most people,
you know, don't know that anatomy carefully and they don't know that there
are layers of female sexual organs. So the outside layer is called the labia
majora. There's skin and fat that's covering up the outside of everything. If
you think about a baby girl and you're changing the diaper, and you look at
the baby, you just see sort of the big fat skin right there; you're not seeing the
vagina. You have to move that apart, like you're cleaning inside for a baby,
below that's the labia minora which is the second layer, below that is the
hymen, and below is the vagina. So the vagina itself is the fourth layer in, if
you will, or the third layer in; it's not just on the very outside part of
our body.

 So when children say they're [sic] private part, they're usually talking
about everything down there between their legs, where they urinate, where
the vagina is and all the skin that covers it up.


 Q. So an eight-year-old who says 'he went inside my private part' could very
well not necessarily be describing the actual vagina.


 A. That's correct. Because if I'm looking at a little girl and I'm rubbing inside
between those labia, I'm inside her private part, but I'm not down into
her vagina.
8. We note that several of our sister courts of appeals have concluded that jury-charge error
exists when the application paragraph of the charge disjunctively lists the culpable mental states of
"intentionally" and "knowingly" with the specific intent necessary to complete the crime--the intent
to arouse or gratify the sexual desire of appellant--because the jury could have convicted appellant
without proper consideration of whether he acted with the proper mens rea required by the statute. 
See Bazanes v. State, 310 S.W.3d 32, 37 (Tex. App.--Fort Worth 2010, pet. ref'd); Jones v. State,
229 S.W.3d 489, 492 (Tex. App.--Texarkana 2007, no pet.); Rodriguez v. State, 24 S.W.3d 499, 502
(Tex. App.--Corpus Christi 2000, pet. ref'd).
9. The charge instructed that jury that:


 A person commits the offense of Indecency with a Child if with a child
younger than 17 years and not his spouse, whether the child is the same or opposite
sex, he engages in sexual contact with the child or causes the child to engage in
sexual contact.

 . . . 

 "Sexual Conduct" means, if committed with the intent to arouse or gratify the
sexual desire of any person:


 (1) any touching by a person, including touching through the clothing, of the
anus, breast, or any part of the genitals of a child; or

 

 (2) any touching of any part of the body of a child, including touching through
the clothing, with the anus, breast, or any part of the genitals of a person.